## MORTON *vs.* PEARMAN.

1. Under the Act of Feb. 20th, 1854, as amended and interpreted by the Act of Dec. 12th, 1859, neither the Superior nor the Supreme Courts are required to grant a new trial in any case for an immaterial error, "*or one not affecting the real merits of the case.*"

Attachment, in Jones Superior Court. Tried before Judge HARRIS, at April Term, 1860.

Sarah L. Pearman instituted her action by attachment against Ezra D. Morton for breach of marriage promise— damages laid at five thousand dollars. The ground for suing out the attachment, as stated in the affidavit, was, that defendant "absconded." Defendant appeared and traversed the truth of the affidavit, and denied that he absconded at the time said affidavit was made.

This issue was submitted to the jury, who found for the plaintiff. Defendant moved for a new trial upon the following grounds :

1st. Because the Court erred in its definition of the word " absconded."

2d. Because the Court erred in its qualification of the charge requested by defendant's counsel, and his comments thereon.

3d. Because the Court erred in the remark made about the time the jury was retiring.

4th. Because the verdict was contrary to law and evidence, and the weight of evidence.

5th. Because the Court erred in admitting testimony that defendant had gone to Putnam county, and since had not been in Jones county, and that he now lived in Scriven or Effingham county.

The following is the charge of the presiding Judge, referred to in the motion for a new trial :

The Judge said, that not finding a Law Dictionary by which he could give them the legal definition of the word " absconded," he would give them what he understood by it. The word absconded, while it might include concealment, meant something more : that a man might abscond without leaving the county ; as when by absenting himself from home designedly to avoid personal service of a writ or an arrest. He further illustrates the popular idea of the word by the case of a runaway negro, of whom it is usually said that he absconds or has absconded, though he has not left the county, but merely absented himself from home. He further charged, that the jury were to consider the testimony, and if, from that, they were satisfied that defendant, being a single man, going about from place to place, with several places of residence, and being under a promise of marriage, they might presume that plaintiff had more reason for believing and swearing that he absconded, than if he had been a married man.

Defendant's counsel requested the Judge to charge, " That a man may be absent from home even for a week at a time, if on business, and intending to return, and a writ left at his residence would be good service, and if they believed that such was the case here, then the attachment would not lie." To which the Judge replied, " Certainly, in a proper case he might be absent for a month or a year and not abscond," ad-

ding, "that there were three modes of commencing a suit: One by leaving a copy at the residence of defendant; another by personal service, and the third by attachment; and that they were to take into consideration all the circumstances of the case—the defendant being a single man, engaged to be married, having several places of residence, and if defendant has put himself in a condition where he could not have been served with bail process, then plaintiff has a right to sue out attachment."

As the jury were about leaving their box, counsel for defendant observed, that he thought his Honor had presented the sole alternative of personal service or by attachment, and had left out the other alternative of leaving a copy at defendant's residence. To which his Honor replied, "but that is not this case."

The Court overruled the motion for a new trial, and counsel for defendant excepted.

JOHN RUTHERFORD & WM. T. MASSEY for plaintiff in error.

ISAAC HERNDON, contra.

*By the Court.*—LUMPKIN, J., delivering the opinion.

I shall not pause to inquire whether or not there may not have been some slight misdirection by the Judge in this case. By the Act of 12th Dec., 1859, (*Pamphlet p.* 48) it is declared that " the New Trial Act of 30th Feb., 1854, shall not be so construed as to require the Superior or Supreme Courts, or either of them, to grant a new trial in any case for an immaterial error, or error not affecting the real merits of the case."

Nothing short of the stringent provisions of the Act of 1854, thus happily amended, could have justified this or any other Court in granting a new trial in this case.

Mr. Ezra D. Morton contracts to marry Miss. Sarah J. Pearman on the twenty-fourth day of Febuary, eighteen hundred and fifty-nine. On the twentieth day of that month, four days before the nuptials were to have been celebrated, he causes Mr. Crawford Newton, at whose house he was stay-

ing, to write to Mr. Bryant, the brother-in-law of the young lady, the following letter, which he, Morton, dictated:

"Mr. Bryant—I take my pen in hand to inform you that Mr. Morton left my house to go to Arkansas; and I am sorry to say to you, that I think something is the matter with him more than common. A few weeks ago I thought he was getting along very well, and bid fair to be a business man. He has left his shop under my care, and all his business for collection. If he gets much worse, I think he will commit suicide, through disappointment. He often speaks of his sister and relatives, and a young lady up there somewhere, without calling any name. Who it is, I cannot tell. He thinks abundance of her from the way he talks. Whether he is disappointed in love, or missed his calculation, I cannot say. There is one thing I can say, something is the matter with him. I think he will come back in a month or such a matter. If he does not, I will let you hear from me again. I told him to write back to me how he got along, and the times, but he did not appear as though he cared much for anything. I am sorry to see him in the way he is.

" C. NEWTON."

This precious billet, worthy of the heads of the confederates who conceived and penned it, having been dispatched, Mr. Morton mounts his horse and puts off to Macon, leaving a negro woman and an old buggy in the hands of his host, Mr. Crawford Newton. The testimony, such as it is, shows that he was knocking about between East Macon and West Macon, for the first few days ensuing the date of the foregoing epistle, engaged in horse-trading, and professing to be ailing part of the time.

One witness testifies, that he asked Mr Morton the cause of his failing to attend and consummate his engagement? He answered, that he started and met Mr. John Stiles, and turned back and went to a fishing party! The same witness told him that he supposed he would have been in Arkansas by that time, from the letter Mr. Newton had written to S. J. Bryant. He replied, that he was sitting by Mr. Newton when he wrote that letter.

On the day after the marriage was to have taken place, Mr. Morton having disappeared from Jones, the county of

his residence, and even his friend and confidant, Mr. Newton, not knowing his whereabouts, having left his house, as he swears, contemporaneously with the writing of the letter already quoted, to go to Florida or Arkansas, this attachment was issued and levied on the defendant's negro and buggy, upon the ground that Ezra D. Morton "absconded." And was not this abundantly true as established by the testimony? The jury could not have found otherwise than as they did. And it would have been manifest error in the Court to have granted a new trial, even conceding his authority to do so.

Judgment affirmed.